266 A.2d 36.
ELEANOR RACHIELE *vs.* DAVID R. McGOVERN,
*City Treasurer et al.*

JUNE 12, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This is a civil action brought to recover damages for personal injuries alleged to have been sustained when a motor vehicle in which the plaintiff was a passenger was in collision with a fire truck owned by the City of Providence and operated by Delor Martin, a member of the Providence Fire Department. The action was originally brought against David R. McGovern in his capacity as City Treasurer of the City of Providence, and subsequently a motion to add Martin, the operator of the fire truck, as a party defendant was granted; he will hereinafter be referred to as the defendant. The case was tried to a justice of the Superior Court sitting with a jury, and a verdict was returned for the defendant. Subsequently the plaintiff's motion for a new trial was granted by the trial justice, and the defendant is now in this court prosecuting an appeal from that judgment.

It appears from the record that plaintiff was a passenger in a motor vehicle being operated by her sister, Isabelle Pilloni, along LaSalle Square in the city of Providence. At the same time defendant was operating a fire truck which, in response to an alarm of fire, was emerging from the company's quarters at the fire station which fronts on LaSalle Square. In the course of such operation the fire truck came into collision with the rear end of the vehicle in which plaintiff was a passenger. There is a substantial

conflict in the evidence as to the circumstances under which this collision occurred.

The defendant testified that upon emerging from the station into the square he was required to veer somewhat to his left to avoid a small car that was passing in front of the fire truck. He then began to turn right in order to proceed around a rotary traffic pattern established in the square. It was at this time that defendant observed the Pilloni car, in which plaintiff was a passenger, noting that it was in motion and in the process of turning left around the rotary. The defendant testified that these maneuvers brought the fire truck almost directly behind the Pilloni vehicle and approximately 10 to 15 feet to its rear. He further testified that the vehicle suddenly stopped and that he was unable to bring the fire truck to a halt before coming into contact with it. He did, however, according to his testimony, swerve to his right so that the left front of the fire truck came into contact with the right rear of the Pilloni vehicle. He further testified that, from the first time he observed the Pilloni vehicle some 25 to 30 feet to his left until the collision actually occurred, that vehicle was continually in his view.

The plaintiff's version of the collision differs from that stated by defendant. The plaintiff testified that the vehicle in which she was riding entered LaSalle Square from Atwells Avenue and, after passing the front of the fire station, made a left turn to proceed around the rotary. She testified that she then heard a siren and that their car had moved partially around the rotary so that the fire station was to the rear of the car. She also testified that upon hearing the siren her sister pulled the car slightly to the left and stopped close to the rotary. She turned around to look and saw the fire truck coming toward them. She further testified that at that time she saw defendant operating the fire truck as it approached her car and his head was turned

to the right in the direction of Empire Street while his body remained facing the Pilloni vehicle. However, she concedes that at the moment of impact defendant was looking forward toward the car in which she was riding.

Despite defendant's contention to the contrary, it is clear from an examination of the trial justice's rescript in this case that he performed the duty incumbent upon trial justices when confronted with motions for new trials on the ground that the verdict is contrary to the weight of the evidence. He clearly, in an exercise of his independent judgment, passed upon the weight of the evidence and the credibility of the witnesses and complied fully with our settled rule. *Barbato* v. *Epstein,* 97 R. I. 191, 196 A.2d 836.

However, defendant contends further that in passing upon the motion for a new trial the trial justice overlooked or misconceived material evidence on a controlling issue in the case. It is settled that where a trial justice has performed the duty imposed upon him when a motion for a new trial is made, his decision will be given great weight and will not be disturbed by this court unless the moving party establishes to the satisfaction of this court that the trial justice in deciding the motion was clearly wrong in that he overlooked or misconceived material evidence on a controlling issue in the case. *Labbe* v. *Hill Brothers, Inc.,* 97 R. I. 269, 197 A.2d 305. We are constrained to conclude that there is merit in this argument.

The record discloses that the trial justice was of the opinion that defendant conceded in his testimony that he had failed to continuously observe the Pilloni car after he had first seen it 25 or 30 feet to his left. In his rescript referring to defendant he states: "His excuse for striking the plaintiff vehicle in the rear was that the operator thereof 'jacked up', meaning that she stopped short and so short as to leave him without the opportunity to stop or otherwise avoid collision. The testimony of the defendant him-

self indicates he was watching another vehicle which apparently appeared to him to be a collision danger to him, and that when he turned his scrutiny toward the front he found the plaintiff vehicle stopped in his path."

Obviously, the trial justice thus attributes to defendant a statement that he did not have the Pilloni car in his observation at all times. An examination of the evidence discloses, however, that it was plaintiff who had testified that defendant did not keep the car in which she was a passenger under his observation at all times but rather that he was looking to his right when the Pilloni car stopped in front of him.

The defendant's testimony as disclosed in the transcript is quite to the contrary. He testified both on direct examination and on cross-examination that he had the Pilloni vehicle under his observation at all times from the time that he first saw it some 25 or 30 feet to his left until the time of contact. The transcript in direct examination disclosed that he was asked if he had seen plaintiff's automobile from the time he first saw it until the contact and had kept it continuously in view. His answer was, "Yes." On cross-examination he was asked: "Well, you had her car under observation from the time you first saw it?" The answer was, "Yes." "You never took your eyes off it?" The answer was, "No."

This misconception of the thrust of defendant's testimony undoubtedly caused the trial justice to conclude that defendant had failed to overcome the prima facie case of negligence which arose out of the establishment by plaintiff of the rear-end collision. In *Maklar* v. *Greene,* 106 R. I. 405, 408, 261 A.2d 15, 18, we said: "We have consistently held that, where a rear-end collision is established, the issue of the defendant's negligence turns on his overcoming of the prima facie case which is made when a plaintiff shows a rear-end collision."

However, in the instant case the evidence introduced in behalf of defendant is such as to be susceptible of reasonable inferences that would explain away the prima facie case of negligence, and it is clear from the record that the trial justice had, on the basis of his misconception of defendant's testimony, overlooked this inferential potential of defendant's testimony. In *O'Donnell* v. *United Electric Rys.*, 48 R. I. 18, 22, 134 A. 642, 644, we said: "* * * if defendant did not explain to the satisfaction of the jury the circumstances which freed it from the imputation of negligence by reason of the collision the jury would be warranted in finding that it occurred by reason of defendant's negligence * * *." We think the inverse of this proposition is equally true, that where the defendant has adduced evidence which, if believed by the jury, would explain away the prima facie case of negligence arising out of the occurrence of the rear-end collision, the jury would be warranted in finding that the accident was not a result of the defendant's negligence.

The trial justice clearly rested his decision to grant a new trial on his conclusion that the jury could not have found on the evidence that the defendant had rebutted the prima facie case of negligence arising out of the rear-end collision. We are of the opinion, however, that on the state of the evidence here, including that of the defendant, the jury was warranted in returning a verdict in his favor and that it was error on the part of the trial justice to disturb that verdict. In reversing the decision of the trial justice, we have scrutinized the transcript with great care, and such examination persuades us that the evidence does not strongly preponderate against the verdict.

The judgment is reversed, and the case is remitted to the Superior Court for entry of judgment on the verdict.

*Pucci, Zito & Goldin, J. Ronald Fishbein,* for plaintiff.

*Robert J. McOsker,* City Solicitor, *David J. Kehoe,* Assistant *City Solicitor,* for defendants.