287 A.2d 634.

STATE *vs.* GERARD E. LUTYE.

FEBRUARY 22, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. At about 12:45 a.m. on July 8, 1969 Gerard E. Lutye, who was then operating a motorcycle on a public highway in North Kingstown, was stopped by a police officer who had clocked him over a distance of six-tenths of a mile traveling at speeds approximating 65 to 67 miles per hour. The complaint which soon thereafter issued charged him with driving "a vehicle on a highway * * * at a speed greater than is reasonable and prudent and safe under the conditions then and there existing, in that he did operate said vehicle at a speed of sixty-five (65) miles per hour in an area zoned for forty-five (45) miles per hour on Post Road." While the complaint does not refer to the particular statute which made defendant's alleged conduct offensive, both he and the state agree that the source was G. L. 1956 (1968 Reenactment) §§31-14-1[1] and 31-14-2. After being found guilty first by a District Court judge and then by a Superior Court jury the defendant came here on a bill of exceptions. In his brief and argument he grouped his several exceptions into six separate issues, one of which he specifically waived during oral argument. We consider the other five issues in the same order as they have been briefed.

At the outset defendant argues that the complaint, although it charged that the speed at which he had been oper-

[1]Section 31-14-1 reads as follows:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event, speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

ating was imprudent and unreasonable, is nonetheless fatally defective because it failed to track the language of the second sentence of §31-14-1 by alleging that the rate of speed at which he was traveling was not so controlled that he could have avoided colliding with any other person, vehicle or conveyance lawfully on or entering the highway. Failure to include that allegation, defendant says, is to ignore the requirement that a complaint charging a statutory offense must allege all of the elements of that offense.

The defendant's invocation of this principle, however appropriate it might be in a different factual setting, is inapposite here because of the way we read §§31-14-1, 31-14-2 and 31-14-3. Those provisions, prior to being fragmented and sectionalized by the codifiers of the 1956 General Laws, were part of a single statutory enactment (P. L. 1950, chap. 2595, art. XXV, sec. 1). When they are read in their entirety and as integral parts of a whole rather than as separate enactments, they reveal a complete legislative plan whose obvious design is, on the one hand, to proscribe the operation of motor vehicles at unreasonable speeds and, on the other, to apprise motorists of the speeds at which they may drive and generally be within the law. *State* v. *Reis,* 107 R. I. 188, 265 A.2d 651 (1970); *State* v. *Marsocci,* 98 R. I. 478, 204 A.2d 639 (1964); *State* v. *Brown,* 97 R. I. 115, 196 A.2d 133 (1963); *State* v. *Campbell,* 97 R. I. 111, 196 A.2d 131 (1963).

In considering prior complaints brought under these statutes we have said that a complaint is bad for uncertainty if it does no more than charge the defendant with operation at an unreasonable speed in violation of §31-14-1. The "more" which is required in order to make certain that which is uncertain, is to advise the operator that the speed at which he was traveling was unreasonable because it was

in excess of the limits designated in §31-14-2², or because he had failed to reduce his speed when he encountered one of the hazards specified in §31-14-3.³ *State* v. *Brown, State* v. *Campbell,* both *supra.* A third alternative for satisfying the certainty test is to charge that the speed was unreasonable because the operator could not so control his vehicle as to avoid colliding with persons or vehicles as particularized in the second sentence of §31-14-1. In each case the principal element of the offense is the operation of a vehicle at an unreasonable speed and certainty is attained by specifying the conduct which made that speed unreasonable.

In this case the complaint charged that to travel at a speed of 65 to 67 miles per hour was unreasonable, not because defendant failed to control his motorcycle as required by the second sentence of §31-14-1, or to reduce his speed upon encountering one of the §31-14-3 hazards, but because his clocked speed exceeded that specified in §31-14-2 for the locality where he was traveling. No more was required.

The defendant next contends that the complaint is invalid because it is predicated upon an absolute speed limit. Sub-

---

[2]Section 31-14-2, insofar as here pertinent, provides:

"Where no special hazard exists that requires lower speed for compliance with §31-14-1 the speed of any vehicle not in excess of the limits specified in this section or established as hereinafter authorized shall be lawful, but any speed in excess of the limits specified in this section or established as hereinafter authorized shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful:

"* * *

"(3) Forty-five (45) miles per hour in such other locations during the nighttime * * *."

[3]Section 31-14-3 reads as follows:

"The driver of every vehicle shall, consistent with the requirements of §31-14-1, drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions."

stantially the same argument was advanced in *State* v. *Costakos*, 92 R. I. 415, 169 A.2d 383 (1961). The defendant in that case was represented by the same attorney who represents this defendant, and in that case in response to substantially the same argument we said, "The [L]egislature has not made speeds in excess of those stated unreasonable and unlawful but only that they are prima facie evidence of unreasonableness * * *." *Id.* at 418, 169 A.2d at 385. That remains the law in this state, and defendant's counsel has been no more persuasive here than he was there.

Next, defendant argues that it was error for the trial justice to sustain the state's objection to a question propounded during his cross-examination of the arresting officer. Although that witness had not qualified as an expert in such matters, he was asked:

> "In your opinion, sir, did Jerry Lutye operate within this clocked space or this clocked area, was he operating in such a way as to avoid colliding with other objects or people lawfully on the highway?"

The state's objection to this question, as we understand it, was that the testimony of the officer, who had not qualified as an expert, should have been restricted to the facts he had observed and that he should not have been permitted to add a judgment or conclusion to those observations. While there is no hard and fast rule which tells us when a nonexpert may augment his testimony of what he saw with an opinion, there are broad principles which provide some guidance. Thus, it is established that he may venture an opinion where "* * * the subject matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time, and the facts upon which the witness is called to express an opinion are such as men in general are capable of comprehending." *Wilson* v. *N. Y., N. H. & H. R. R.*, 18 R. I. 598, 602, 29 A. 300, 301 (1894). *Accord, C. W. Stuart & Co.* v. *Smith*, 98 R. I. 440, 442-43, 204 A.2d 297, 298 (1964); *Feuti*

v. *Feuti,* 92 R. I. 219, 222, 167 A.2d 757, 759 (1961). It is otherwise, however, and no expression of opinion will be permitted, if a verbal picture of the testimony has been so adequately portrayed that the jurors, without benefit of the witness' appraisal, are able to draw an intelligent conclusion from the witness' recitation of his observations. *Glennon* v. *Great Atlantic & Pacific Tea Co.,* 87 R. I. 454, 143 A.2d 282 (1958); *Fontaine* v. *Follett,* 51 R. I. 413, 416-17, 155 A. 363, 364 (1931).

Nothing in the record here, or in defendant's arguments, suggests that the jury in this case, once it became aware of the witness' observations, were not then fully as capable as was the witness to decide whether or not defendant was "* * * operating in such a way as to avoid colliding with other objects or people lawfully on the highway." This consideration plus the absence of any suggestion that the witness' answer to the question, whatever it might have been, would have appreciably assisted the jury in the performance of their fact-finding function leads us to conclude that the trial justice did not err when he sustained the state's objection to the question. *See State* v. *Kozukonis,* 100 R. I. 298, 301, 214 A.2d 893, 896 (1965).

A further assignment of error is to the trial justice's ruling permitting the state to inquire of defendant during cross-examination whether he had ever seen "the signs that said 45 miles an hour," to which defendant replied, "I'm not familiar with the signs on Post Road even though I've ridden it about twenty times a day. I don't know where they're located." Even were we to assume that the question was irrelevant and the ruling permitting it erroneous, we fail to see how defendant was prejudiced either by the question or the response.

Finally, defendant brings into question that portion of §31-14-2 which provides that: "* * * any speed in excess of the limits specified in this section or established as herein-

496

after authorized shall be *prima facie* evidence that the speed is not reasonable or prudent and that it is unlawful \* \* \*." (emphasis supplied) He argues that under the quoted language the state's presentation of evidence that he was driving at 65 miles per hour in a 45 mile per hour zone created a presumption that his speed was unreasonable and that the presumption thus created vanished when he produced some satisfactory evidence that for him to travel at the clocked speed under the conditions and having regard to the actual and potential hazards then prevailing was neither unreasonable nor imprudent. In short, his contention is that upon the introduction of rebutting evidence the case should have proceeded as if the presumption had never been created.

Defendant's contention brings us into the midst of the thicket of confusion which surrounds the law relating to presumptions. Without either venturing into that thicket or adding to that confusion we go no further here than to say that presumptions, or at least those which are classified as rebuttable, are not evidence; that they have no weight as evidence; and that they become inoperative and are completely excluded from a case once they are rebutted by satisfactory evidence. *Colangelo v. Colangelo,* 46 R. I. 138, 140, 125 A. 285, 286 (1924). The same is not true, however, with respect to *prima facie* evidence. That kind of evidence is not synonymous with a presumption; as evidence it is no different from any other evidence of probative force; and it must be submitted to the trier of facts to be weighed by it together with all of the other probative evidence in the case. *State v. Costakos,* 92 R. I. 415, 169 A.2d 383 (1961);[4] *Gemma v. Rotondo,* 62 R. I. 293, 301, 5 A.2d 297,

---

[4]In *Costakos* we construed the same statute as we pass on today. In addition, defendant in this case was represented by the same attorney who appeared for the defendant in that case, and his arguments in both on the question of presumption versus *prima facie* evidence were substantially the same.

301 (1939); *Hill* v. *Cabral,* 62 R. I. 11, 19, 2 A.2d 482, 485 (1938).

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *R. Raymond Greco,* Special Asst. Attorney General, for plaintiff.

*Aram K. Berberian,* for defendant.