369 A.2d 249.

ROBERT L. ARMSTRONG *vs.* RICHARD W. POLASKI.

FEBRUARY 14, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. This is a civil action to recover damages for injuries allegedly sustained as the result of a collision between a motorcycle operated by the plaintiff and an automobile owned and operated by the defendant. It was tried to a jury and resulted in a verdict and judgment for the defendant. The case then came here on the plaintiff's appeal, and we deferred consideration of the merits in order to afford the defendant an opportunity to file an additional brief. *Armstrong* v. *Polaski,* 116 R.I. 661, 360 A.2d 558 (1976). He has now availed himself of that opportunity. The only errors assigned are to the trial justice's refusal to honor two requests to charge the jury.

The material facts may be briefly stated. On July 3, 1971, plaintiff, a Warwick police officer then on motorcycle patrol, and defendant were each proceeding in a westerly direction on Strawberry Field Road in the city of Warwick. The plaintiff was traveling at between 25 and 30 miles an hour and defendant was ahead of him and proceeding at a lesser speed. As they neared Ormsby Street, which intersects Strawberry Field Road on the north or to their right, the gap between their two vehicles narrowed to several automobile lengths. At that point, according to plaintiff, defendant first veered to the right as if to turn onto Ormsby Street, then suddenly headed left as if intending to make a left turn onto Hanover

Street, which enters Strawberry Field Road from the south. In neither instance did he signal his intention to turn except by activating his brake lights. The plaintiff further testified that he had no idea what defendant would do next and that consequently, in the hope of avoiding a collision, he applied his own brakes; but his efforts were unavailing, and his cycle skidded and impacted with defendant's automobile.

The defendant's version of the occurrence differed. He denied veering right, said that he intended to turn left onto Hanover Street, and claimed that preparatory to doing so he turned on his directional lights, slowed down, moved to the center line of the roadway and started his left turn onto Hanover Street. It was then, he said, that his automobile was struck by plaintiff's motorcycle.

Our summary of the evidence, though brief, suffices to to indicate that plaintiff's theory of the case was that his testimony, particularly that regarding defendant's failure to signal his intention to turn, would, if believed, have permitted the jury to find: (1) that the proximate cause of the collision was defendant's manner of operating his vehicle; and (2) that plaintiff's operation of his motorcycle was not a contributing factor.

The plaintiff argues that he was entitled to have the jury pass on his theory of the case and that therefore the trial justice, not having otherwise specifically instructed thereon, should have honored his request to explain to the jury that G. L. 1956 (1968 Reenactment) §§31-16-5[1] and 31-

---

[1]General Laws 1956 (1968 Reenactment) §31-16-5 provides:

"Turn signal required.—No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in §§31-16-2 and 31-16-3, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any

16-6[2] imposed upon defendant an obligation to give an appropriate signal of his intention to turn his vehicle from a direct course or prior to moving right or left upon the roadway.[3]

It is, of course, axiomatic that the trial justice was obliged to instruct the jury with precision and clarity with respect to the rules of law applicable to the issues raised at trial. *Smith Dev. Corp.* v. *Bilow Enterprises, Inc.*, 112 R.I. 203, 207-08, 308 A.2d 477, 480 (1973); *Macaruso* v. *Massart*, 96 R.I. 168, 172, 190 A.2d 14, 16-17 (1963). That obligation was not fulfilled, plaintiff contends, because the trial justice's refusal to charge as requested deprived the jury of an instruction on the law to be applied in the event it determined that defendant did not signal appropriately.

Although the precise issue raised by this contention is one of first impression in this state, other courts dealing with similar facts have generally held that an instruction that does not clearly explain the effect to be accorded to a motorist's failure to signal his intention to turn does not so clarify the issues as to make them comprehensible to a jury and is therefore inadequate and erroneous. *Petrole* v. *George A. Fetter, Inc.*, 411 F.2d 5, 7 (3d Cir. 1969); *MacDonald* v. *Hall*, 244 A.2d 809, 814 (Me. 1968); *Olson* v.

---

vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement."

[2]General Laws 1956 (1968 Reenactment) §31-16-6 provides:
"Time of signaling turn.—A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning."

[3]The plaintiff protected his right to urge this asserted error on appeal, first by timely filing a written request for a detailed instruction, and then at the conclusion of the charge by objecting to the trial justice's failure to instruct accordingly. He thus complied with Super. R. Civ. P. 51(b); no more was required. *Allen* v. *D'Ercole Constr. Co.*, 104 R.I. 362, 370-72, 244 A.2d 864, 869-70 (1968).

*Sutherland,* 224 Ore. 208, 210-11, 355 P.2d 774, 775 (1960); *McMahon* v. *Young,* 442 Pa. 484, 486-87, 276 A.2d 534, 535-36 (1971); *Piper* v. *Miller,* 154 W.Va. 178, 188-89, 173 S.E.2d 662, 668 (1970). We see no sound reason for concluding otherwise.

Although the foregoing discussion is dispositive of plaintiff's appeal, we consider his other assignment of error because the issue it raises will undoubtedly recur at the retrial. That assignment concerns that portion of the charge where, in language substantially tracking §31-14-2,[4] the trial justice instructed the jury that speed in a residential or business area in excess of 25 miles per hour "* * * shall be *prima facie evidence* that the speed is not reasonable or prudent and that it is unlawful." (Emphasis added.) The plaintiff's objection centers not on that instruction per se but on the trial justice's failure to grant his request that it be supplemented with a definition of the term "prima facie evidence." Those words, he contends, did not convey a simple, plain and sensible meaning and might have led the jurors to the erroneous conclusion that a finding that plaintiff's speed was in excess of 25 miles per hour required a further finding that he was contributorily negligent.

We need go no further than Wigmore to find support for that contention. He says that "[t]he term *'prima facie evidence'* or *'prima facie case'* is used in two senses, and

---

[4]General Laws 1956 (1968 Reenactment) §31-14-2 provides in pertinent part:

"Where no special hazard exists that requires lower speed for compliance with §31-14-1 the speed of any vehicle not in excess of the limits specified in this section or established as hereinafter authorized shall be lawful, but any speed in excess of the limits specified in this section or established as hereinafter authorized shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful:

(1) Twenty-five (25) miles per hour in any business or residence district * * *."

it is often difficult to detect which of these is intended in the judicial passage in hand." 9 Wigmore, *Evidence* §2494 at 293 (3d ed. 1940). In one sense, he continues, the term is applied so that if the plaintiff makes out a "prima facie case" and the defendant does nothing in response, the plaintiff is entitled to a directed verdict; in the other sense, it denotes the stage of the case at which the plaintiff has produced enough evidence to get the case to the jury for its consideration.[5] *Id.* at 293-94.

"The difference between these two senses of the term," Wigmore concludes, "is practically of the greatest consequence; for, in the latter sense, it means merely that the proponent is safe in having relieved himself of his duty of going forward, while in the former sense it signifies that he has further succeeded in creating it anew for his opponent." *Id.* at 295-96. Certainly, in this case the jury was entitled, though not in the language suggested by the plaintiff,[6] to be advised of the sense in which the trial justice was using the term "prima facie evidence."

---

[5] In this state, though no rule has been clearly articulated. we presently lean to use of the term in the latter sense. In *State* v. *Lutye,* 109 R.I. 490, 496, 287 A.2d 634, 638 (1972), we said:

> "That kind of evidence is not synonymous with a presumption; as evidence it is no different from any other evidence of probative force; and it must be submitted to the trier of facts to be weighed by it together with all of the other probative evidence in the case."

*See Rachiele* v. *McGovern,* 107 R.I. 241, 246, 266 A.2d 36, 38 (1970). But earlier pronouncements of this court appear to support use of the term in both senses. *See Kent* v. *Draper Soap Co.,* 75 R.I. 30, 36-37, 63 A.2d 571, 575 (1949); *Gemma* v. *Rotondo,* 62 R.I. 293, 301, 5 A.2d 297, 301 (1939); *Hill* v. *Cabral,* 62 R.I. 11, 19, 2 A.2d 482, 485 (1938).

[6] The plaintiff's request was:

> "Prima Facie Evidence—'[E]vidence * * * which suffices for the proof of a particular fact until contradicted and overcome by other evidence.' *Dodson* v. *Watson,* 110 Tex. 355, 358, 220 S.W. 771, 772, 11 A.L.R. 583 (1920). '[A]n inference or presumption of law affirmative or negative of a fact, in the absence of proof; or until proof can be

The plaintiff's appeal is sustained, the judgment appealed from is reversed, and the case is remitted to the Superior Court for a new trial.

*John D. Lynch,* for plaintiff.

*William Gerstenblatt,* for defendant.

---

attained or produced to overcome the inference.' *People ex rel. Judson* v. *Thacher,* 1 Thompson & Cook 158, 167-68 (N.Y. Sup. Ct. 1873)."

That instruction would have confused rather than assisted the jury.